IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | | |
|---|---|---|
| BMO HARRIS BANK N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:22-cv-442 |
| | ) | |
| MICHAEL W. HARRIS d/b/a | ) | |
| M&H EXPRESS, | ) | |
| | ) | |
| Defendant. | ) | |

**VERIFIED COMPLAINT TO RECOVER
PERSONAL PROPERTY AND FOR DAMAGES**

Plaintiff, BMO Harris Bank N.A., by its attorneys, and in support of its Verified Complaint to Recover Personal Property and for Damages (the "Complaint"), states as follows:

**PARTIES**

1. Plaintiff, BMO Harris Bank N.A. ("Plaintiff"), at all relevant times, was and is a national banking association with its main office in Chicago, Cook County, Illinois. At all times, Plaintiff was and is authorized to transact business in the State of Tennessee.

2. Defendant, Michael W. Harris d/b/a M&H Express ("Defendant"), was and is an individual domiciled within, and a citizen of, the State of Tennessee and may be served with process at 3824 New Highway 68, Madisonville, Tennessee 37354.

**JURISDICTION AND VENUE**

3. The parties are of diverse citizenship.

4. The amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

5. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a).

1

6. This Court has personal jurisdiction over the Defendant as Defendant is an individual residing and operating a business in the State of Tennessee.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is residing and operating a business in Monroe County, Tennessee.

## FACTUAL ALLEGATIONS

8. Plaintiff realleges and incorporates by reference the foregoing paragraphs as though set forth fully herein.

### The Agreements

9. On or about March 8, 2019, Defendant entered into a Loan and Security Agreement (together with all amendments, modifications, and collateral documents relating thereto, the "First Agreement") with Plaintiff wherein Plaintiff financed Defendant's purchase of the equipment described therein (the "First Loan Collateral"), and Defendant agreed to repay the financed amount, including interest, pursuant to the terms and conditions stated therein. A true and correct copy of the First Agreement is attached hereto and incorporated herein as **Exhibit A**.

10. Plaintiff performed all of its obligations under the First Agreement and did, in fact, finance Defendant's purchase of the First Loan Collateral. Defendant thereafter began making monthly payments to Plaintiff as required under the First Agreement.

11. On or about August 23, 2019, Defendant entered into a Loan and Security Agreement (together with all amendments, modifications, and collateral documents relating thereto, the "Second Agreement") with Plaintiff wherein Plaintiff financed Defendant's purchase of the equipment described therein (the "Second Loan Collateral"), and Defendant agreed to repay the financed amount, including interest, pursuant to the terms and conditions stated therein. A true

and correct copy of the Second Agreement is attached hereto and incorporated herein as **Exhibit B**.

12. Plaintiff performed all of its obligations under the Second Agreement and did, in fact, finance Defendant's purchase of the Second Loan Collateral. Defendant thereafter began making monthly payments to Plaintiff as required under the Second Agreement.

13. On or about February 24, 2021, Defendant entered into a Loan and Security Agreement (together with all amendments, modifications, and collateral documents relating thereto, the "Third Agreement") with Plaintiff wherein Plaintiff financed Defendant's purchase of the equipment described therein (the "Third Loan Collateral"), and Defendant agreed to repay the financed amount, including interest, pursuant to the terms and conditions stated therein. A true and correct copy of the Third Agreement is attached hereto and incorporated herein as **Exhibit C**.

14. Plaintiff performed all of its obligations under the Third Agreement and did, in fact, finance Defendant's purchase of the Third Loan Collateral. Defendant thereafter began making monthly payments to Plaintiff as required under the Third Agreement.

15. The First Agreement, Second Agreement, and Third Agreement are referred to collectively herein as the "Agreements."

16. The First Loan Collateral, Second Loan Collateral, and Third Loan Collateral are referred to collectively herein as the "Collateral."

17. Pursuant to the Agreements, Defendant granted Plaintiff a first-priority security interest in the Collateral. In summary, the Collateral consists of the following vehicles (including any other attachments, accessions, substitutions, or replacement parts):

| Agreement | Year | Make | Model | VIN |
|---|---|---|---|---|
| First | 2020 | Utility | Refrigerated Vans | 1UYVS253XL6796113 |
| Second | 2020 | Utility | Refrigerated Vans | 1UYVS2537L6030601 |
|  | 2020 | Utility | Refrigerated Vans | 1UYVS2539L6030602 |
| Third | 2016 | Peterbilt | 389-Series | 1NPXGGGG70D450106 |

18. Moreover, pursuant to the Agreements, Defendant granted to Plaintiff "a first priority security interest in the Equipment to secure (a) payment of the Total Amount and all other obligations of debtor to Lender under this Agreement, [and] (b) the payment and performance of all other debts, liabilities and obligations of debtor of every kind and character, whether now existing or hereafter arising, to Lender, *whether under this Agreement or any other agreement . . . .*" (Exhibits A–C, ¶ 2.1 (emphasis added)).

19. Plaintiff properly perfected its security interest in the Collateral by possessing the Certificates of Title and recording its interest as First Lienholder thereon. True and correct copies of the Certificates of Title for the Collateral are attached hereto and incorporated herein as **Exhibit D**.

20. Under the terms and conditions of the Agreements, failure to make a payment when due is considered an event of default. *See e.g.*, Exhibit A, ¶ 5.1(a).

**Default under the Agreements**

21. Defendant is in default under the Agreements for his failure to pay the amounts due thereunder.

22. More specifically, Defendant failed to make the October 7, 2022 payment due under the Second Agreement and the October 1, 2022 payment due under the Third Agreement. Defendant's default is continuing, and Defendant has failed to make subsequent payments due under the Second Agreement and the Third Agreement.

23. As a result of Defendant's default, Plaintiff elected to accelerate the balance due under the Agreements and declare the entire indebtedness owed pursuant to the Agreements immediately due and payable. As of the date of acceleration, the principal amount due and owing under the Agreements was $206,203.75.

24. Plaintiff made demand upon Defendant to pay the amounts due and owing under the Agreements and to surrender possession of the Collateral.

25. In addition, on or about December 6, 2022, Plaintiff, by and through counsel, provided Defendant with written notice of Plaintiff's election to accelerate the balance due under the Agreements and again made demand for possession of the Collateral. A true and correct copy of the notice sent to Defendant on December 6, 2022 is attached hereto and incorporated herein as **Exhibit E**.

26. Under the Agreements, Defendant is obligated to pay interest at the contract rate set forth therein on any unpaid amounts due thereunder and, upon acceleration, Defendant is obligated to pay interest on all unpaid amounts at the rate of one and one-half percent (1 1/2%) per month or the maximum rate not prohibited by applicable law. *See e.g.*, Exhibit A, at ¶ 5.3. Interest is calculated on a 360 day year consisting of twelve 30 day months. *See e.g.*, Exhibit A, at 1.

27. In addition, under the Agreements, Borrower is obligated to pay late charges and other fees due under the Agreements. *See e.g.*, Exhibit A, at PAYMENT SCHEDULE.

28. In addition, under the Agreements, upon default, Defendant is obligated to pay all expenses of retaking, holding, preparing for sale, and selling the Collateral. *See e.g.*, Exhibit A, at ¶ 5.2.

29. Under the terms of the Agreements, after an event of default, Defendant is obligated to pay the attorneys' fees and costs incurred by the lender in the enforcement of its rights under the Agreements. *See e.g.*, Exhibit A, at ¶ 5.2.

30. Calculated as of November 21, 2022, the amount due and owing under the Agreements, including accrued interest and fees, but not including attorneys' fees and expenses or cost of collection is an amount not less than $211,910.25.

31. Pursuant to the Agreements, upon Defendant's default thereunder, Defendant is obligated to immediately turn over to Plaintiff possession of the Collateral.

32. Plaintiff notified Defendant of his default under the Agreements and made demand that Defendant surrender possession of the Collateral to Plaintiff and that Defendant pay the amounts due under the Agreements.

33. Despite express demand, Defendant has failed or refused to pay the amounts due and owing under the Agreements to Plaintiff.

34. Despite express demand, Defendant has failed or refused to return possession of the Collateral described in the Agreements.

35. The Agreements expressly provide that the parties unconditionally waive their respective rights to a jury trial of any claim or cause of action relating thereto.

36. Plaintiff has performed any and all conditions and obligations required of it under the Agreements.

37. All conditions precedent to the institution of this action have been performed, excused or have occurred.

# COUNT I
## INJUNCTIVE RELIEF

38. Plaintiff realleges and incorporates by reference the foregoing paragraphs as though set forth fully herein.

39. Defendant continues to possess and utilize, or is capable of utilizing, the Collateral.

40. On any given day, the Collateral is located, or is capable of being located, in diverse places throughout the United States.

41. The Collateral depreciates and deteriorates as a result of its continued use by Defendant, with no commensurate value being conferred to Plaintiff in the form of payments due and owing from Defendant.

42. Defendant has or should have in place capabilities to identify, locate, and surrender the Collateral, which capabilities may now be breaking down.

43. Plaintiff will suffer irreparable injury for which no adequate remedy at law exists unless Defendant and other persons and firms having knowledge of this injunction are (a) enjoined from continuing to use the Collateral; (b) ordered to advise Plaintiff of the location of the Collateral; and (C) ordered to surrender the Collateral to Plaintiff.

WHEREFORE, Plaintiff prays that:

a. Defendant and other persons and firms having knowledge of the injunction be temporarily, preliminarily, and permanently enjoined from using the Collateral as of the date of entry of the injunction order;

b. Defendant be ordered to disclose to Plaintiff the precise location of the Collateral in order for Plaintiff to reclaim it;

c. Defendant be temporarily, preliminarily, and permanently enjoined from restricting access of Plaintiff to the Collateral; and

d. Plaintiff be granted such other and further relief as shall be just and equitable.

## COUNT II
### EXPEDITED ACTION TO RECOVER PERSONAL PROPERTY
### PURSUANT TO T.C.A. § 29-30-106

44. Plaintiff realleges and incorporates by reference the foregoing paragraphs as though set forth fully herein.

45. This claim is brought pursuant to Rule 64 of the Federal Rules of Civil Procedure and T.C.A. § 29-30-106 *et seq.*

46. Plaintiff is lawfully entitled to possession of the Collateral by virtue of the Agreements.

47. Upon information and belief, and without the opportunity for inspection and for purposes of setting bond only, Plaintiff estimates the fair market value of the Collateral to be approximately $286,725.00.

48. The Collateral continues to be located and used at the business address of Defendant, 3824 New Highway 68, Madisonville, Tennessee 37354, but the Collateral may not be located at such address at any given time due to the mobile nature of the Collateral.

49. Due to the mobile nature of the Collateral and its location, Defendant is capable of and likely to remove the Collateral from the jurisdiction of the Court.

50. Borrower has failed and defaulted under the terms of the Agreements by failing to make payments as agreed.

51. Accordingly, pursuant to the terms of the Agreements, Plaintiff is entitled to take immediate possession of the Collateral.

52. The property claimed by the Plaintiff has not been taken for tax, assessment or fine levied under any law, or seized under any execution or attachment against the goods and chattels of Plaintiff liable to execution.

53. Defendant has possession of and wrongfully detains the property from Plaintiff in Monroe County, Tennessee.

54. Plaintiff has incurred attorneys' fees and costs and is entitled to the expenses of retaking and selling its security, including reasonable attorneys' fees, under the authority of the Agreements and applicable law.

55. By reason of the foregoing, Plaintiff is entitled to and demands a judgment directing Defendant to immediately surrender to Plaintiff possession of the Collateral.

WHEREFORE, Plaintiff requests that:

a. The Court enter an order granting the issuance of a Writ of Possession in favor of Plaintiff and awarding Plaintiff immediate possession of the Collateral;

b. Plaintiff be awarded a judgment against Defendant for the value of the Collateral, if not delivered;

c. Plaintiff be awarded a judgment against Defendant for damages for retention of the Collateral;

d. Plaintiff be awarded a judgment for permanent possession of the Collateral; and

e. Plaintiff be granted such other and further relief as shall be just and equitable.

## COUNT III
### BREACH OF CONTRACT

56. Plaintiff realleges and incorporates by reference the foregoing paragraphs as though set forth fully herein.

57. The Agreements represent written contracts between Defendant and Plaintiff.

9

Case 3:22-cv-00442-TAV-JEM   Document 1   Filed 12/12/22   Page 9 of 12   PageID #: 9

58. Plaintiff performed all of the obligations required of it under the Agreements.

59. Defendant breached the contracts by failing to make required payments due under the Agreements.

60. As a result of Defendant's breach, Plaintiff has exercised its right to accelerate the unpaid balance due under the Agreements.

61. Plaintiff has made demand upon Defendant, but Defendant has failed to tender the same in satisfaction of the indebtedness.

62. As a result, Plaintiff has been damaged by Defendant's failure or refusal to remit payment due under the Agreements.

63. Pursuant to the terms of the Agreements, Defendant is obligated to indemnify Plaintiff for any reasonable costs, including attorney's fees, that Plaintiff incurs in enforcing its rights under the Agreements. Plaintiff has already incurred attorney's fees and costs and will continue to incur such fees and costs throughout the proceedings.

64. Defendant has waived its right to a jury trial.

65. For the reasons set forth above, Defendant is liable to Plaintiff for Defendant's breach of contract, plus interest accruing each day and costs of collection, plus all reasonable attorney's fees and costs incurred in this matter, less any net proceeds received from the Collateral.

WHEREFORE, Plaintiff prays that this Court enter a judgment in its favor and against Defendant in the amount due under the Agreements, the exact amount to be proven at or before trial, plus its attorneys' fees, costs, and interest, together with such other and further relief as shall be just and equitable.

Dated: December 12, 2022.	Respectfully Submitted,

                                                          **HUSCH BLACKWELL LLP**

                                                         */s/ Ryan A. Burgett*
                                                         Ryan A. Burgett (Tenn. Bar No. 33641)
                                                         736 Georgia Avenue, Suite 300
                                                         Chattanooga, TN 37402
                                                         (423) 266-5500
                                                         (423) 266-5499 (fax)
                                                         Ryan.Burgett@huschblackwell.com
                                                         ***Attorneys for BMO Harris Bank N.A.***

# **VERIFICATION**

I, Nolan Broadie, declare:

1. I am employed by BMO Harris Bank N.A. ("Plaintiff"), as a Litigation Specialist and maintain an office in Cedar Rapids, Iowa.

2. Plaintiff is the owner of the account of Michael W. Harris d/b/a M&H Express ("Defendant"). I am over the age of eighteen years old and authorized to make this Verification on behalf of Plaintiff.

3. I am charged with administering Plaintiff's account with Defendant and am one of the custodians of the business records and credit files relating to the accounts of Defendant with Plaintiff. I certify that such documentation is maintained by Plaintiff in the ordinary course of its business and as a regular practice.

4. I have read the foregoing Verified Complaint to Recover Personal Property and for Damages and based upon personal knowledge and the business records of Plaintiff verify that the facts stated in it are true.

Under penalties of perjury, I declare that I have read the foregoing and that the facts stated in it are true, to the best of my knowledge and belief.

Dated: December 9th, 2022.

_____
Nolan Broadie